UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAYETANO YEPEZ LEYVA,

                Petitioner,

        v.                                      9:16-CV-0082
                                                        (GLS)
WARDEN,

                Respondent.
_____

APPEARANCES:                                  OF COUNSEL:

CAYETANO YEPEZ LEYVA
17190-171
Petitioner, pro se
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

HON. RICHARD HARTUNIAN             CHARLES E. ROBERTS
United States Attorney                      Assistant U.S. Attorney
Attorney for Respondent
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

GARY L. SHARPE
Senior United States District Judge

# DECISION and ORDER

## I.    INTRODUCTION

      Petitioner Cayetano Yepez Leyva filed a petition for a writ of habeas corpus and

exhibits, pursuant to 28 U.S.C. § 2241, in which he challenges a 2013 prison disciplinary

hearing that resulted in the loss of good time. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1,

Exhibits. He claims that his rights to due process and equal protection were violated

because the evidence produced at the disciplinary hearing was insufficient to establish that

he constructively possessed a cell phone. Pet. at 1-7.[1] Petitioner asks this Court to "expunge all sanctions and penalties imposed" as a result of the disciplinary hearing. Pet. at 8. Respondent opposes the petition. Dkt. No. 7, Response to Petition for Writ of Habeas Corpus ("Response"); Dkt. Nos. 7-1 through 7-5, Exhibits. For the reasons that follow, the petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

On April 15, 2010, petitioner was sentenced in the District of South Carolina to serve 240 months in prison, followed by ten years supervised release, for possession with intent to distribute five kilograms or more of cocaine, and fifty grams or more of crack cocaine. Dkt. No. 7-1, Declaration of Cheryl Magnusson ("Magnusson Dec.") at 1-2; Dkt. No. 7-2, Inmate Data Sheet.

On July 29, 2013, petitioner was serving his sentence at FCC[2] Yazoo City Low in Mississippi. He was cited for violating Code 108, which prohibits inmates from possessing cell phones, which are classified as hazardous tools. Pet. at 1; Magnusson Dec. at 2; 28 C.F.R. § 541.3, Table 1. According to the incident report, Unit Manager F. Silva conducted rounds in petitioner's housing area and became suspicious of the way shoes were lined up under petitioner's bunk. Dkt. No. 7-3 at 6, Incident Report. He conducted a search of petitioner's cubicle,[3] and noticed that the cinder block wall under petitioner's bunk "appeared altered." *Id.* Silva used a pen and found "a soft spot in the joint between the cinder blocks

---

[1] The cited page numbers for all documents submitted by petitioner and respondent refer to those generated by the Court's electronic filing system (ECF).

[2] "FCC" stands for Federal Correctional Complex.

[3] Petitioner's living quarters were alternately referred to as a cell or a cubicle in the exhibits submitted to the Court. For the sake of clarity, the Court will refer to petitioner's living quarters as a cubicle.

and began digging into it." *Id.*  The joint, which was soft, appeared to be filled with toothpaste and was painted to match the wall. *Id.*  Silva continued to dig into the wall, eventually uncovering a "Blackberry type cellular phone" and a charger wrapped separately in plastic wrap. *Id.*  Photographs of the wall, cell phone and charger were taken, and the items were confiscated. *Id.*; Dkt. No. 7-3 at 7, Contraband/Evidence Photographs.

On July 29, 2013, Lieutenant Standley issued the incident report to petitioner. Dkt. No. 7-3 at 6, Incident Report.[4]  Pursuant to 28 C.F.R. § 541.5, Lieutenant Standley investigated the incident and concluded that the charge against petitioner was warranted. Magnusson Dec. at 2; Dkt. No. 7-3 at 9, Part III - Investigation.  He referred the incident report to the Unit Discipline Committee (UDC). *Id.*, Magnusson Dec. at 2.  The UDC conducted a review and forwarded the incident report to the Discipline Hearing Officer (DHO) for further proceedings pursuant to 28 C.F.R. §541.7 (a)(4) because the charge against petitioner was a "High Severity offense."  Magnusson Dec. at 3; Dkt. No. 7-3 at 10.

On July 31, 2013, Correctional Counselor C. Barnes advised petitioner of the discipline hearing and his rights before the DHO.  Magnusson Dec. at 3; Dkt. No. 7-3 at 11, Inmate Rights at Discipline Hearing; Dkt. No. 7-3 at 12, Notice of Discipline Hearing Before the (DHO).  Petitioner did not request a staff representative to assist him, but stated he wanted to call witnesses at the hearing.  Dkt. No. 7-3 at 13.

A disciplinary hearing was held on August 1, 2013.  Pet. at 1-2; Magnusson Dec. at 4-5; Dkt. No. 7-3 at 2-5, DHO Report.[5]  Petitioner acknowledged he received a copy of the

---

[4]  This document also appears in petitioner's exhibits.  Dkt. No. 1-1 at 1.

[5]  Part of this document also appears in petitioner's exhibits.  Dkt. No. 1-1 at 2-3.

3

incident report, confirmed he understood it, and chose to proceed without a staff representative. *Id.* He denied possessing the cell phone, stated he did not know the phone was in his cubicle, and told the DHO that it belonged to Inmate Angel Vargas. *Id.*

Inmate Christopher Wilson testified on petitioner's behalf. Wilson told the DHO that Vargas was using the phone in Wilson's cubicle. Dkt. No. 7-3 at 2. Wilson stated that he told Vargas and his companion not to use the phone in his cubicle, and they left and went to another cubicle. *Id.* Wilson also claimed staff searched for the cell phone in his cubical before and after he moved into it looking for the phone. *Id.*

The DHO reviewed the evidence, including the incident report, petitioner's statement, Wilson's statement, the photographs of the cell phone and charger, and the "'Inmate History Quarters' SENTRY roster, dated August 1, 2013," showing that on July 29, 2013, petitioner was assigned to the cubicle where the cell phone and charger were found. Dkt. No. 7-3 at 2-3; Dkt. No. 7-3 at 7, Contraband/Evidence Photograph(s); Dkt. No. 7-3 at 8, Inmate History Quarters Report. The DHO concluded petitioner was guilty of the charge against him, finding "Silva's charge to carry more credibility than" petitioner's "denial." Dkt. No. 7-3 at 3. The DHO explained that "the greater weight of the evidence shows that while searching [petitioner's] assigned cubicle, a cellular telephone was found inside [petitioner's] cubicle, a clear violation of Code 108[.]" *Id.*

The DHO further found that Wilson was attempting to protect himself and petitioner "from adverse action by staff because of him being friends with" petitioner and "because he was also written an incident report for this same offense." Dkt. No. 7-3 at 4. Even if Wilson saw Vargas using a cell phone, the DHO concluded that information did not "change the fact

4

that a cellular telephone was subsequently found inside" petitioner's cubicle. *Id.* The DHO further found that it was

> highly unlikely that other inmates could be inside of [petitioner's] cubicle long enough to conceal a cellular telephone and charging cord in a joint of a cinder block wall, fill in that joint and paint over that joint without [petitioner] and [his] cellmate knowing about it or other inmates telling [him] and [his] cellmate about it once other inmates observed other inmates in [petitioner's] cubicle.

*Id.* at 4. Finally, the DHO noted that policy made petitioner responsible for everything on his person, in his property and in his cubicle, and it was petitioner's responsibility to keep those areas free of contraband. *Id.* (citing Program Statement 5270.09, Inmate Discipline Program, Appendix C, page 39). Because the contraband was found in petitioner's cubicle, petitioner was "being held responsible for it being there." *Id.* Petitioner received the following sanctions: (1) disallowance of thirty-one days of good conduct time; (2) forfeiture of 150 days of non-vested good conduct time; (3) disciplinary segregation for ninety days; and (4) the loss of commissary, phone and visitation privileges for one year. *Id.* at 5.[6]

On or about October 9, 2013, petitioner filed a Regional Administrative Remedy Appeal in which he denied possessing the cell phone and argued anyone could have put it in the wall in his cubicle. Dkt. No. 1-1 at 4, Regional Administrative Remedy Appeal No. 753856-R1, Part B-Response.[7] On November 7, 2013, Regional Director Sero denied the appeal. *Id.* Sero explained that the DHO outlined in detail the evidence upon which his

---

[6] Habeas review is available only where the petitioner is "in custody" for the alleged violation. 28 U.S.C. §§ 2241, 2242, 2243. Therefore, the only sanction imposed by the DHO that is properly the subject of review is the disallowance of good time credits. The imposition of disciplinary segregation expired under its own terms. The remaining sanctions do not amount to "custody" and therefore are not a proper subject of habeas review. *Williams v. Menifee*, No. 1:05-CV-4045, 2006 WL 2481823, at *3 n.1 (S.D.N.Y. Aug. 25, 2006), *aff'd* 331 F. App'x. 59 (2d Cir. Jun. 3, 2009).

[7] This document also appears in respondent's exhibits. Dkt. No. 7-5 at 4.

finding of guilt was based and the reasons the DHO did not believe petitioner's defense. *Id.* Sero also agreed with the DHO that petitioner was responsible for keeping his cubicle free of contraband, and that petitioner was responsible for all items found in that area. *Id.*

On April 13, 2014, petitioner filed a Central Office Administrative Remedy Appeal in which he argued, among other things, that the DHO overlooked exculpatory evidence provided by petitioner's witness. Dkt. No. 1-1 at 6-7, Central Office Administrative Remedy Appeal.[8]  On September 24, 2015, National Inmate Appeals Administrator Ian Connors denied the appeal. Dkt. No. 1-1 at 5, Administrative Remedy No. 753856-A2, Part B-Response.[9] Connors found that the disciplinary hearing comported with the due process requirements set forth in Program Statement 5270.09 because the DHO detailed in a written report the evidence upon which he relied, and explained why Wilson's testimony "failed to relieve [petitioner] of [his] responsibility for the incident." *Id.*  Finally, Connors concluded the DHO's determination was reasonable and supported by the evidence, and the sanctions imposed were "commensurate to the severity level of the offense committed and in compliance with policy." *Id.*

This action followed.

## III.   DISCUSSION

A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the appropriate way for federal prisoners to challenge disciplinary proceedings that result in the loss of good time credits. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Preiser v. Rodriguez*, 411 U.S.

---

[8] This document also appears in respondent's exhibits. Dkt. No. 7-5 at 2-3.

[9] This document also appears in respondent's exhibits. Dkt. No. 7-4 at 2.

6

475, 500 (1973); *Adams v. United States*, 372 F.3d 132, 134-35 (2d Cir. 2004)*; Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). A petitioner disputing the loss of good time credit must first exhaust his or her administrative remedies, as petitioner did in this case, and may then seek judicial review through a habeas corpus petition under Section 2241. *Carmona*, 243 F.3d at 632.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Inmates must be provided: (1) at least twenty-four hours advance written notice of the charges; (2) the opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; and (3) a written statement as to the evidence relied on and reasons for the hearing officer's decision. *Id.* at 563-72.

The decisions of disciplinary boards receive great deference but must be supported by "some evidence in the record." *Edwards*, 520 U.S. at 648 (quoting *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454 (1985)); *see Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (stating that the evidence must also be reliable). Review of a disciplinary board's decision does not "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Rather, it requires a reviewing court to determine if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56; *see Flanagan v. Tamez*, 368 F. App'x. 586, 587-88 (5th Cir. 2010) (no "de novo review of the disciplinary board's factual finding is required," but courts "must consider "whether any evidence at all

7

supports the action taken by the prison officials.") (internal quotation marks and citation omitted); *Johnson v. Goord*, 305 F. App'x. 815, 818 (2d Cir. 2009) (stating that the "some evidence" standard "is extremely tolerant and is satisfied if there is *any* evidence in the record that supports the disciplinary ruling.") (emphasis in original, citation omitted).

In this case, petitioner has not alleged any facts that indicate the disciplinary hearing and resulting sanctions were contrary to the requirements set forth in *Hill* and *Wolff*. He was given adequate notice of the charges against him, including a copy of the Incident Report, within twenty-four hours. Dkt. No. 7-3 at 2, DHO Report; Dkt. No. 7-3 at 9, Incident Report. The incident was investigated and referred to the DHO, and petitioner was given notice of the disciplinary hearing. Dkt. No. 7-3 at 10, 11-12. Petitioner appeared at the hearing, waived his right to a staff representative, and presented evidence. The DHO considered both petitioner's and Wilson's statements. *Id.* at 2-5. The DHO completed a written report that detailed the charge against petitioner, what transpired at the hearing, a summary of the evidence relied upon, and the reasons for his findings. *Id.* The DHO's decision was based upon the reporting staff member's incident report, the photographs, and the Inmate History Quarters document showing petitioner was assigned to the cubicle in which the cell phone was found. *Id.* at 3-4. Based on the record, the disciplinary proceedings comported with the due process requirements set forth in *Wolff*.

Petitioner claims that the DHO's finding that he possessed the cell phone was not supported by sufficient evidence because it was found in a "cinder block wall in a cell unit shared by more than inmate [sic]," he did not physically possess the cell phone when it was found, and the cell phone was not recovered from his locker, mattress or any other personal

property. *See* Pet. at 4-5. Those claims are without merit. Petitioner does not dispute that the cell phone was found in the cinder block wall under his bunk, or that he was assigned to the cubicle in which it was found. That evidence constituted "some evidence" in support of the DHO's findings. *See Hill*, 472 U.S. at 456-57 ("some evidence" that petitioner participated in the assault of another inmate existed where petitioner and two other inmates were seen fleeing the scene of an assault because, "[a]lthough the evidence . . . might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *Flanagan*, 368 F. App'x. at 586-87 ("some evidence" that petitioner constructively possessed a cell phone existed where the "incident report provides evidence that the contraband was found in an area that Flannagan shares with only five other inmates-in the wall near his bunk bed. Since the DHO considered this report in making his finding, we find that there is "some" evidence in the record to support the DHO's conclusion that Flannagan was guilty of constructive possession of the contraband."); *Johnson*, 305 F. App'x. at 818 ("some evidence" of possession of marijuana existed where "nineteen individually wrapped bags of marijuana were discovered in the pilaster adjacent to Johnson's prison cell," Johnson had access to the top of the pilaster from inside his cell, and although other inmates also had access to the pilaster, "the evidence as a whole reflected that Johnson had the greater ability to access the pilaster without being observed than other inmates had."); *Santiago v. Nash*, 224 F. App'x. 175, 177 (3d Cir. 2007) ("[I]n the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of

9

the offense charged."); *Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1992) ("The proposition that constructive possession provides 'some evidence' of guilt where only a few inmates have access is unproblematic"; upholding disciplinary conviction where there was a twenty-five percent probability that inmate was owner of the contraband); *McNeil v. Perkins*, No. 5:08-CV-0254, 2010 WL 3878858 at *3 (S.D. Miss. Feb. 19, 2010) ("the law is clear that under the doctrine of constructive possession, prisoners can be disciplined when contraband is found in their living area, even if the area is accessible to other inmates."), *adopted by* 2010 WL 3843042 (S.D. Miss. Sept. 28, 2010).

  Additionally, the DHO considered petitioner's claim that he did not know that the cell phone was there, and found his defense incredible. Dkt. No. 7-3 at 4. Contrary to petitioner's claim, the DHO also considered Wilson's testimony, found it incredible, and noted that even if Wilson saw another inmate using the cell phone, that did not absolve petitioner of responsibility for possessing it because it was found in petitioner's cubicle in the cinder block wall under his bunk. *Id.* This court is not required to make an "independent assessment of the credibility of witnesses," *Hill,* 472 U.S. at 455-56, and accepts the DHO's findings. *See Livingston v. Kelly*, 423 F. App'x. 37, 40 (2d Cir. 2011) (credibility of witness at disciplinary hearing "was properly resolved by the hearing officer and is not a subject for independent review by this court").

  In sum, because the DHO's findings were supported by "some evidence," petitioner's due process claim fails. *Edwards*, 520 U.S. at 648; *Hill*, 472 U.S. at 454.

  Finally, petitioner appears to be arguing that he was treated differently from similarly situated inmates in violation of his equal protection rights. Pet. at 7. The Equal Protection

Clause requires that all people similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A petitioner who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)).

Petitioner's equal protection claim is not explained in any detail.  Pet. at 7.  In support of his vague claim, petitioner cites to *Ryan v. Scism,* 474 F. App'x. 49 (3d Cir. 2012) (per curiam), cert. denied, 133 S. Ct. 377 (2012).  *Id.*

In *Ryan*, the petitioner filed a petition for a writ of habeas corpus pursuant to section 2241 in which he alleged his rights to due process and equal protection were violated in a disciplinary hearing that resulted in a finding of guilt for possessing a cell phone in violation of Code 108.  *Ryan*, 474 F. App'x. at 50.  The Third Circuit upheld the district court's judgment denying the writ, finding Ryan's due process claims (which were different from petitioner's claims) lacked merit.  *Id.* at 50-51.  Although the district court erred by failing to consider Ryan's equal protection claims, the Third Circuit rejected his arguments.  *Id.* at 52-53.  Specifically, Ryan argued that he received different treatment than other, similarly situated inmates because the other inmates received lesser sanctions for the same offense.  *Id.*  The Third Circuit ruled that Ryan "failed to offer evidence that [the other inmates] were similarly situated to him."  *Id.* at 52.

Like Ryan, petitioner in this case "has alleged nothing to indicate that his disciplinary sanction was the result of purposeful discrimination." *Bouchard v. Shartle*, No. 1:11-CV-3273, 2011 WL 2559530 at *7 (D.N.J. Jun. 27, 2011) (rejecting equal protection argument based upon the BOP's decision to reduce the severity of sanctions imposed on two other

11

inmates who possessed cell phones). Petitioner's vague equal protection claim therefore fails. *See Lloyd v. Shartle,* 514 F. App'x. 77, 80 (3d Cir. 2013) (per curiam) (finding no equal protection violation based upon a claim that two other inmates had Code 108 violations reduced to lesser charges because the petitioner failed to show that "the decisionmakers in his case acted with a discriminatory purpose") (citing *Rhodes v. Robinson*, 612 F.2d 766, 775 (3d Cir. 1979) (explaining that "[b]ecause the punishment handed down in any case of prisoner misconduct is determined on the basis of the facts of the particular case, the equal protection clause cannot require exact uniformity in degrees of punishment")).

In sum, the final administrative decision in this case did not violate the Constitution, laws or treaties of the United States, and the petition is dismissed.

## IV. CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition (Dkt. No. 1) is **DENIED and DISMISSED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

May 20, 2016
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge